Wilkin, J.
 

 The first and controlling question is whether the work done by the plaintiffs was within the purview of the statutes providing for minimum wages.
 

 Section 17-3, General Code, provides:
 

 “The term ‘public improvement’, as used in this act, shall include all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works, and all other structures or works constructed by the state of Ohio or any political subdivision thereof.”
 

 Section 17-4 provides:
 

 “Any public authority authorized to contract for a public improvement may, before advertising for bids for the construction thereof, fix and determine a fair rate of wages to be paid by the successful bidder to the employees in the various branches or classes of the work. ’ ’
 

 And Section 17-6 is as follows:
 

 “Any contractor or sub-contractor who shall violate the wage provisions of such contract, or who shall'suffer, permit or require any employee to work for less than the rate of wages so fixed, shall be fined not less than $50.00 or more than $500.00. Any employee upon any public improvement who is paid less than the fixed rate of wages applicable thereto may recover from the contractor or sub-contractor the difference between the fixed rate of wages and the amount paid to him, and in addition thereto a penalty -equal in amount to such difference.”
 

 Does the operation of the gravel pit come within the meaning of the term “public improvement”? Were the plaintiffs “employees in the various branches or classes of the work”? Is the court justified in saying that the plaintiff in each case is an “employee upon any public improvement ’ ’ ?
 

 While the language varies in the various sections,
 
 *362
 
 and is different from the language used in the contract, yet all must be construed together, and the controlling phrase is found in Section 17-6. Since that section imposes a fine upon any employer who violates the provisions of the contract or statutes, and provides a penalty to be paid by such employer, it must be strictly construed. And the language of the other sections and of the contract cannot be extended beyond the natural intendment of the language of Section 17-6.
 

 The question therefore becomes: Were the men who worked in the gravel pit employees
 
 upon a public improvement?
 

 That the plaintiffs did not consider themselves employees
 
 up.on <my public improvement
 
 is apparent from their testimony. They distinguished between the men in the gravel pit and the men on the job, between the work they were doing and the improvement. The plaintiff Zane testified that it was about two miles from the gravel pit to the Urbana road, where the improvement began. In answer to the question as to what was done with the gravel and sand produced in the pit, he testified that it went “out to the road.” Again he said, “I presume it went onto the road, I wasn’t on the road, I was in the gravel pit. All that stuff went to the road. ’ ’
 

 The plaintiff Hunter, in response to the question, “You never did any work out on the road?” said “No.”
 

 The plaintiff Myers, in response to the question “Could you see the men working on Mr. Clymer’s contract from the gravel bank?” answered “No, you could see the trucks but you couldn’t see them.”
 

 The plaintiff Lowe, when asked “What became of this sand and gravel after you boys took it out of the bank?” said: “They took it up to the job.” And in response to the question whether that was a little bit west of the gravel bank, he replied: “Yes, about a mile and a half.”
 

 
 *363
 
 The Common Pleas Court said of the plaintiffs, in its charge to the jury, “They worked in getting out gravel and preparing it, screening and washing it, for use in the construction of that highway, and that the sand and gravel taken to said highway, and prepared by these plaintiffs, were necessary materials.” It based its charge not upon the fact that the men were
 
 employees upon the
 
 improvement, but that the materials which they produced were used in the improvement. The charge recites: “It is admitted that the work they did perform was in excavating and preparing this gravel for use, and that the gravel was used on the highway improvement under this contract.”
 

 And the Court of Appeals in its opinion states:
 

 “The material thus produced was taken directly from the gravel bank onto the improvement or to a place adjacent thereto and immediately, or soon after being placed, was used on the improvement. In our judgment, under this state of fact, the taking and preparing of this gravel used upon the construction was a ‘class of the work of construction’, and the employees working in the gravel bank and in operations incident thereto, were protected by the terms of the statute * * # >>
 

 While there is no dispute as to the facts stated by the Common Pleas Court and the Court of Appeals, yet those facts do not show the plaintiffs to have been “employees upon any public improvement.” To extend the provisions of the statute to all employees who prepare material for a public improvement would be to include within the provisions of the law the employees of a cement factory-which makes cement for a public improvement, and the employees of a brick plant which makes paving brick for a public highway, if such cement plant or brick fáctory is owned or operated by the contractor in charge of the public improvement. Such a construction would likely lead to conflicts with regulations and “codes” governing wages of
 
 *364
 
 other industries. Clearly it was not the intention of the legislature to extend the provisions of Section 17-6 so far. It can be safely assumed that the intention of the legislature is accurately stated in the section of the law which imposes the penalty. From its position in the series of sections, and from its very nature, we must conclude that it determines the legislative intent. And because it is a penal section it must be construed in favor of the person against whom it assesses the penalty. That penal laws are to be construed strictly is axiomatic.
 
 Denbow
 
 v.
 
 State,
 
 18 Ohio, 11;
 
 State, ex rel. Moore Oil Co.,
 
 v.
 
 Daunben,
 
 99 Ohio St., 406, 124 N. E., 232;
 
 State, ex rel. Schorr,
 
 v.
 
 Viner et al., Civil Service Comm. of City of Cincinnati,
 
 119 Ohio St., 303, 164 N. E., 119;
 
 State, ex rel. Ice & Fuel Co.,
 
 v.
 
 Kreuzweiser, Inspector of Buildings,
 
 120 Ohio St., 352, 166 N. E., 228.
 

 There are other considerations which show that the gravel pit and the operations carried on there were quite separate and apart from the work required by the public contract. The record discloses that the gravel bank was acquired by the defendant prior to the commencement of the work on the highway, that it represented a very substantial investment, and contained much more material than was required for the road improvement. The record further reveals that all the sand and gravel required by the improvement was not obtained at the defendant’s pit, but that some was purchased elsewhere, and that when the road improvement was completed there remained at the gravel bank about 8000 tons of prepared material which was sold to other contractors. It also discloses that the quarry or pit was equipped to turn out materials other than those needed in highway construction, and that it continued in the ownership of the defendant long after the completion of the public contract. A careful consideration of the whole record leads to the conclusion that the gravel pit where the plaintiffs were em
 
 *365
 
 ployed was in no sense a public improvement as defined in Section 17-3.
 

 However desirable it may be that all laborers working for the same employer in the same vicinity should receive the same wages, and however commendable the legislative purpose to obtain for laborers adequate compensation, still such ends could not justify the violation by this court of one of the fundamental rules of statutory construction.
 

 Having determined that the plaintiffs were not employees upon a public improvement, as required by Section 17-6 to permit recovery from the defendant, it follows that the judgments of the Common Pleas Court and the Court of Appeals must be reversed and judgment entered here for the defendant. It is therefore unnecessary to consider the other questions raised by the petition in error.
 

 The judgment of the Court of Appeals and that of the Court of Common Pleas will therefore be reversed, and this court, entering the judgment which the Court of Appeals ought to have entered, will enter judgment for the plaintiff in error.
 

 Judgment reversed and judgment for plaintiff in error.
 

 Weygandt, C. J., Stephenson, Jones, Matthias and Beyes, JJ., concur.