**ALLEN CO., Inc. v. EDEN.**

Court of Appeals of Kentucky.

April 23, 1954.

H. R. Wilhoit, Grayson, Beverly White, Winchester, for appellant.

Counts & Counts, W. H. Counts, O. F. Duval, Olive Hill, for appellee.

CAMMACK, Justice.

The Allen Company has moved for an appeal from a judgment awarding Enoyce Eden $937 for the difference between wages paid him by the Allen Company during 1949 and 1950, and wages which he claimed should have been paid him by reason of KRS 337.510 and KRS 337.550. We are granting the appeal and reversing the judgment because we think the trial court erred in holding that a part of the work performed by Eden for the Allen Company came within the scope of KRS 337.510 through KRS 337.550.

In February, 1949, the Allen Company established an asphalt mix plant at Lawton, in Carter County, and began producing asphalt mix materials. At that time the Company had no contract with the State of Kentucky or any public authority whereunder the product of the Lawton plant could be used. All of the materials produced at Lawton by the Company were sold until August, 1949. During the summer of 1949 the Company was awarded two contracts for resurfacing highways in Carter and Rowan Counties. Four additional resurfacing contracts in those counties were awarded the Company in April and June, 1950.

In 1949, the Company produced approximately 34,000 tons of asphalt mix at the Lawton plant, approximately 7,500 tons of which were used by the Company in resurfacing highways under its contracts. In 1950, the Company produced approximately 27,000 tons of mix at the plant, approximately one-third of which was sold commercially, and the remaining two-thirds used on highway resurfacing work under its contracts.

Eden went to work for the Company at the Lawton plant the latter part of March, 1949. He was first employed as a common laborer at 95 cents an hour. He was paid time and a half for overtime. On May 1, he started operating a 40 HP International TD-40 tractor, with blade attached. This tractor was used in mixing materials at the Lawton plant. He operated the tractor most of the time until July 19, 1950, and was paid $1.15 an hour. He received time and a half for overtime. During 1949 Eden worked 1,237 hours for the Company. During 226 hours of Eden's work a part of the materials produced at the Lawton plant were being used by the Company on highway resurfacing projects. A part of the materials produced at the Lawton plant were being used by the Company on highway resurfacing work during the 616 hours Eden was operating the tractor in 1950.

The Allen Company's plant at Lawton was located on property belonging to the Standard Slag and Stone Company, adjacent to its quarry, and from which the Allen Company obtained the limestone for its mix product. All of Eden's work was done at the Lawton plant. At no time did he work in any capacity on a road or highway resurfacing project, and his foreman and fellow workers worked only at that plant. During all of the time Eden was employed the Standard Slag and Stone Company had in effect with a local A.F.L. Union representing its employees a collective bargaining contract. That contract called for $1.15 an hour for the operation of a tractor of the type operated by Eden. The wage rates attached to the invitation for highway bids in 1949 called for 80 cents

an hour for common labor, $1.70 an hour for "Operator of Tractor of less than 50 HP," and $2.15 an hour for "Bulldozer Operator." The corresponding rates for 1950 were 90 cents, $1.75 and $2.20. The judgment awarded Eden wages based on those for a bulldozer operator for the hours worked by him when any part of the materials produced at the Lawton plant by the Company were used on its highway resurfacing projects.

KRS 337.510 provides that, before entering into contracts, public authorities shall ascertain the prevailing rates of wages for the work called for in the construction of the public work in the locality where the work is to be performed. KRS 337.520 provides that the public authority shall establish wages at the same rate prevailing in the same trade or occupation in the same locality where the work is to be performed. The prevailing wages shall be at the same rate in the locality prevailing under collective agreements or understandings between bona fide labor organizations and their employers. Wages on public projects shall not be less than the prevailing wages in the locality where the work is to be performed.

We think the work carried on by the Company at the Lawton plant was an enterprise independent and separate from its highway construction and resurfacing contracts. The Company had no highway contracts when Eden began working at the Lawton plant. He received the same wages called for in the contract negotiated by the A. F. L. with the Standard Slag and Stone Company and its employees. When the Company established its plant at Lawton it may have hoped to obtain highway contracts in that part of the State, but it can not be said that that was its primary reason for establishing the plant because it sold commercially one-half of its output during 1949 and 1950. Furthermore, the plant had been in operation several months before the Company received its first resurfacing contract. Each of the highway projects was set up as a public enterprise and wages established by the public authority in ac-

cordance with KRS 337.510 and KRS 337.520. We think, as did the Supreme Court of Ohio in the case of Clymer v. Zane, 128 Ohio St. 359, 191 N.E. 123, 93 A.L.R. 1245, that work performed in the production of materials used in the construction of a public project is not work on the project itself, though being carried on by the owner of the producing plant, where the materials are produced in a separate enterprise.

Judgment reversed, with directions to set it aside, and for the entry of a judgment in conformity with this opinion.