DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant/cross-appellee, Sheet Metal Workers' International Association, Local Union No. 33 ("Local 33") appeals from the judgment of the Medina County Court of Common Pleas, which granted summary judgment in favor of appellee/cross-appellant Gene's Refrigeration, Heating Air Conditioning, Inc. ("Gene's"), thereby dismissing the union's complaint. Gene's cross-appeals from the judgment of the Medina County Court of Common Pleas, *Page 2 
which denied its motion for attorney fees. This Court reverses the judgment of the trial court, which granted summary judgment in favor of Gene's.
 I. {¶ 2} Gene's is a contractor which submitted a bid for a public improvement, the Granger Fire Station Project, located in Medina County, Ohio. The parties agree that this project was construction within the meaning of the Ohio Prevailing Wage Law and governed by R.C. 4115.03 to4115.16. Gene's was awarded a contract for the project. Gene's participated in both site construction work and off-site fabrication of duct work. Some of the duct work fabricated by Gene's in its off-site workshop was installed in the project. Elie Cherfan was an employee of Gene's. Mr. Cherfan worked exclusively in the off-site workshop. Gene's paid Mr. Cherfan, and all other off-site workshop employees, at their regular non-prevailing wage rates, which were lower than the prevailing wage rates.
 {¶ 3} Local 33 is a bona fide organization of labor, which exists in whole or in part for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees. On July 12, 2005, Local 33 filed an interested party administrative prevailing wage complaint pursuant to R.C. 4115.16(A) with the Director of the Ohio Department of Commerce, Division of Labor and Workers' Safety, Bureau of Wage and Hour, asserting violations of the Prevailing Wage Law. The director did not rule on the *Page 3 
merits of the administrative complaint within sixty days. On September 16, 2005, Local 33 filed an interested party prevailing wage enforcement action in the Medina County Court of Common Pleas, pursuant to R.C.4115.16(B). Local 33 alleged project-wide underpayment and other violations, exceeding the claims regarding only Mr. Cherfan. Gene's timely answered.
 {¶ 4} Gene's filed a motion for summary judgment, arguing that (1) Local 33 lacks standing to sue on behalf of anyone other that Mr. Cherfan, (2) off-site workshop employees are not subject to Ohio's Prevailing Wage Law, and (3) Gene's is entitled to attorney fees.
 {¶ 5} Local 33 filed a cross-motion for partial summary judgment, arguing that (1) the union has standing to sue to enforce the prevailing wage law on the entire project, and (2) workshop employees who work on materials to be used in or in connection with the project are entitled to receive the prevailing wage rates. Local 33 also filed a motion to strike exhibits B, C, D, E, F, H and I, attached to Gene's motion for summary judgment. The parties then filed a series of responses and replies.
 {¶ 6} On March 7, 2006, the trial court denied the motion to strike and both motions for summary judgment. On March 27, 2006, the parties filed a joint motion to reconsider, appending joint stipulations of fact. The matter was referred to the magistrate, who issued a decision on April 27, 2006, granting Local 33's motion to strike the exhibits; denying Local 33's motion for partial summary *Page 4 
judgment; and granting Gene's motion for summary judgment, thereby dismissing the union's complaint. The magistrate did not address the issue of attorney fees.
 {¶ 7} Local 33 timely filed objections to the magistrate's decision, objecting to the magistrate's findings that (1) Local 33 has standing to pursue the action only on behalf of Mr. Cherfan, (2) the off-site shop work performed by Mr. Cherfan is not subject to the prevailing wage law, and (3) Gene's is entitled to summary judgment in its favor. Gene's also timely objected to the magistrate's decision, objecting to the magistrate's striking of exhibits B, C, D, E, F, H and I, attached to Gene's motion for summary judgment.
 {¶ 8} On June 9, 2006, the trial court affirmed the magistrate's decision, ordering that Local 33's motion to strike Gene's exhibits is well taken, that the union has standing to pursue this action only on behalf of Mr. Cherfan, and that the off-site shop work performed by Mr. Cherfan is not subject to the prevailing wage law.
 {¶ 9} On June 14, 2006, Gene's filed a motion for attorney fees. On June 29, 2006, Local 33 filed a notice of appeal. The next day, Local 33 filed a motion to vacate the hearing regarding attorney fees, and alternatively, its opposition to an award of attorney fees to Gene's.
 {¶ 10} On August 4, 2006, this Court dismissed the appeal for lack of a final, appealable order, because the trial court failed to independently enter judgment as to the parties' motions for summary judgment. Sheet Metal Workers' *Page 5 Internatl. Assn., Local Union 33 v. Gene's Refrigeration, Heating AirConditioning Inc., 9th Dist. No. 06CA0053-M.
 {¶ 11} On November 22, 2006, the trial court issued a journal entry in which it denied Gene's motion for an award of attorney fees. On November 29, 2006, the trial court issued a judgment entry in which it overruled all objections to the magistrate's decision; granted Gene's motion for summary judgment, but denied its motion for attorney fees; and denied Local 33's cross-motion for summary judgment. Local 33 timely appealed, raising two assignments of error for review. Gene's cross-appealed, raising one assignment of error for review.
 II. LOCAL 33'S FIRST ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED WHEN IT ADOPTED THE MAGISTRATE'S LEGAL CONCLUSION THAT LOCAL 33 WAS NOT AN `INTERESTED PARTY' WITH RESPECT TO A PARTICULAR PUBLIC IMPROVEMENT WHERE LOCAL 33 WAS `AUTHORIZED TO REPRESENT EMPLOYEES OF A PERSON' WHO SUBMITTED A BID ON THE PUBLIC IMPROVEMENT."
 {¶ 12} Local 33 argues that the trial court erred by adopting the magistrate's decision, which granted summary judgment in favor of Gene's by finding that Local 33 has standing to pursue its prevailing wage law complaint only on behalf of Elie Cherfan. Local 33 argues that, as an interested party, it has standing to file suit on behalf of more than Mr. Cherfan and to pursue more than underpayment violations of Ohio's Prevailing Wage Law. This Court agrees. *Page 6 
 {¶ 13} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12.
 {¶ 14} Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 15} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,449. *Page 7 
 {¶ 16} Both Gene's and Local 33 relied on the Ohio Supreme Court caseSheet Metal Workers' Internatl. Assn., Local Union No. 33 v. MohawkMechanical, Inc. (1999), 86 Ohio St.3d 611, in support of their respective motions for summary judgment. Gene's argued in its motion for summary judgment that Mohawk stands for the proposition that a labor union may represent only those employees in a prevailing wage action who have signed an authorization for representation form. Gene's asserted that a union has no standing as an interested party to represent any other employee who has not expressly authorized such representation. Local 33, on the other hand, argued in its motion for summary judgment that the Mohawk court held that a union attains standing, i.e., interested party status, to sue regarding any violation of the prevailing wage law arising out of an entire public improvement project so long as any employee working on the project has authorized representation.
 {¶ 17} Ohio's Prevailing Wage Law is set out in R.C. 4115.03 through4115.16. R.C. 4115.16 authorizes an "interested party" to file a complaint alleging a violation of the prevailing wage law with the director of commerce, or in the court of common pleas, if the director has not ruled on the merits of the complaint within sixty days. R.C.4115.16(A) and (B).
 {¶ 18} R.C. 4115.03(F) defines "`interested party,' with respect to a particular public improvement," as *Page 8 
 "(1) Any person who submits a bid for the purpose of securing the award of a contract for construction of the public improvement;
 "(2) Any person acting as a subcontractor of a person mentioned in division (F)(1) of this section;
 "(3) Any bona fide organization of labor which has as members or is authorized to represent employees of a person mentioned in division (F)(1) or (2) of this section and which exists, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees;
 "(4) Any association having as members any of the persons mentioned in division (F)(1) or (2) of this section."
 {¶ 19} The parties stipulated that Gene's submitted a bid and was awarded a contract for construction of the public improvement. The parties further stipulated that Local 33 in a bona fide organization of labor which exists, in whole or in part, for the purpose of negotiating with employers concerning wages, hours, or terms and conditions of employment of employees. In addition, the parties stipulated that Elie Cherfan, an employee of Gene's during the relevant time, authorized Local 33 to represent him.
 {¶ 20} In the Mohawk case, Mohawk was a subcontractor whose employees worked on a public improvement project. The project was exempt from the competitive bidding requirements normally associated with public works pursuant to R.C. 3313.372. Mohawk did not pay its employees the prevailing wages under the belief that the prevailing wage laws did not apply to this project. At the time, Mohawk's employees were not members of Local 33; rather, Local 33 was involved in a labor organization and representation drive with those employees. *Page 9 
After finding that the prevailing wage law applies in non-competitive bid situations, the Supreme Court considered whether Local 33, which was not a party to a collective bargaining agreement with the employer, could still be an "interested party" pursuant to R.C. 4115.03(F). The Supreme Court found that it is enough that the union "in its normal course concerns itself with the stuff of the prevailing wage statute."Mohawk, 86 Ohio St.3d at 614.
 {¶ 21} The Supreme Court further held that "[t]he statute does not require that a majority of employees authorize the representation." Id. The Mohawk court continued:
 "Employees of Mohawk took affirmative acts to authorize Local 33 to file a complaint on their behalf. Local 33 claims that the union received oral authorization from Mohawk employees to represent them in the prevailing wage complaint. While verbal authorization may be enough under the terms of the statute to allow a union to file a complaint, the record is devoid of any evidence of such authorization. However, within sixty days of the filing of the complaint, three Mohawk employees had given written authorization to Local 33 to represent them in the prevailing wage action. That action cured any jurisdictional defect that may have been present."[1] Id.
 {¶ 22} This Court finds, upon consideration of the Supreme Court's discussion in Mohawk and the statute's definition of "interested party" within the *Page 10 
context of "a particular public improvement," that Mr. Cherfan's written authorization to allow Local 33 to represent him in this prevailing wage action was sufficient to impute standing to Local 33 to file a prevailing wage complaint with respect to the entire project and any and all violations with respect to any and all of Gene's employees. The Supreme Court did not specify that Local 33 only had standing to pursue a complaint on behalf of those specific employees who signed the authorization forms. Rather, the high court expressly stated that the statute does not require that any specific percentage of employees must authorize representation before the union may file a prevailing wage complaint. In fact, it appears that it is merely the affirmative act of an employee's authorizing representation which substantiates jurisdiction and imputes interested party status to the union.
 {¶ 23} Neither party cites any other case law which has addressed this issue, and, in fact, this Court has found none. This Court has found three law review articles which cite the Mohawk case, including one authored by Chief Justice Moyer who dissented in Mohawk; however, none illuminates the issue before us.
 {¶ 24} Based on the above discussion, this Court finds that Gene's failed to meet its initial burden under Dresher to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law on the issue of Local 33's standing as an interested party to file a prevailing wage claim on behalf of *Page 11 
any or all of Gene's employees and in regard to any or all violations of the prevailing wage law. Accordingly, the trial court erred by granting summary judgment in favor of Gene's on this issue. Local 33's first assignment of error is sustained.
 LOCAL 33'S SECOND ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED WHEN IT ADOPTED THE MAGISTRATE'S LEGAL CONCLUSION THAT TIME SPENT BY GENE'S EMPLOYEES WORKING ON MATERIALS USED IN OR IN CONNECTION WITH A PARTICULAR PUBLIC IMPROVEMENT, I.E., SHOP TIME, WAS NOT COMPENSABLE AT THE PREVAILING WAGE RATES APPLICABLE IN THE JOB SITE'S LOCALITY."
 {¶ 25} Local 33 argues that the trial court erred by adopting the magistrate's decision, which granted summary judgment in favor of Gene's upon finding that shop work performed by an employee off-site from the public improvement project is not subject to Ohio's Prevailing Wage Law. This Court agrees.
 {¶ 26} This Court has set out our standard of review of summary judgments above.
 {¶ 27} In its motion for summary judgment, Gene's relied on a 1934 decision of the Ohio Supreme Court, Clymer v. Zane (1934),128 Ohio St. 359. The Clymer case involved a contractor's employees who worked in an off-site gravel pit to provide sand and gravel for concrete to be used in a public improvement project. The applicable prevailing wage law at the time was codified in Section 17 of the General Code. Section 17-4, General Code, provided for the *Page 12 
payment of "a fair rate of wages to be paid by the successful bidder to the employees in the various branches or classes of the work." Section 17-6, General Code, provided for fines and penalties for any contractor/subcontractor who violated the wage provisions of the contract. In addition, that section provided for the recovery by "[a]ny employee upon any public improvement" of a penalty sum from the constractor/subcontractor.
 {¶ 28} The issue before the Supreme Court was whether "the men who worked in the gravel pit [were] employees upon a publicimprovement?" (Emphasis in original.) Id. at 362. The Clymer court held:
 "A private enterprise, separate in time and in space, is not necessarily a part of a public improvement because owned and operated by the contractor in charge of the public improvement, and workmen employed in such private enterprise cannot be held to be employees upon a public improvement solely because material prepared in such enterprise is used in the public improvement." Id. at paragraph three of the syllabus.
The Supreme Court reasoned:
 "To extend the provisions of the statute to all employees who prepare material for a public improvement would be to include within the provisions of the law the employees of a cement factory which makes cement for a public improvement, and the employees of a brick plant which makes paving brick for a public highway, if such cement plant or brick factory is owned or operated by the contractor in charge of the public improvement. Such a construction would likely lead to conflicts with regulations and `codes' governing wages of other industries. Clearly it was not the intention of the Legislature to extend the provisions of section 17-6 so far. It can be safely assumed that the intention of the Legislature is accurately stated in the section of the law which imposes the penalty. From its position in the series of sections and from its very nature we must conclude that it determines the legislative intent. And because it is a *Page 13 
penal section it must be construed in favor of the person against whom it assesses the penalty." Id. at 363-64.
 {¶ 29} Local 33 argues that the holding in Clymer was superseded when the legislature enacted legislation the next year in 1935 to "amend sections 17-3, 17-4 and 17-5 of the General Code and to enact supplementary sections 17-4a and 17-5a pertaining to prevailing rate of wages on public improvements." Am. S.B. No. 294. Section 17-4a, General Code, was supplemented to provide in relevant part:
 "The wages to be paid for a legal day's work, to laborers, workmen or mechanics upon any material to be used upon or in connection therewith, shall not be less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work on, about or in connection with such labor is performed in its final or completed form is to be situated, erected or used and shall be paid in cash."
 {¶ 30} The Ohio Supreme Court has stated that "a legislative body in enacting amendments is presumed to have in mind prior judicial constructions of the section[.]" State ex rel. Cty. Bd. of Edn. of HuronCty. v. Howard (1957), 167 Ohio St. 93, 96 (holding that prior Supreme Court case law interpreting a statutory provision was still authoritative law even though the legislature had amended the statute many times since, because the legislature never changed the particular phraseology at issue). The Supreme Court has further held that "legislative inaction in the face of longstanding judicial interpretations of [a] section [of a statute] evidences legislative intent to retain existing law." State v. Cichon (1980),61 Ohio St.2d 181, 183-84. *Page 14 
 {¶ 31} It has been said:
 "The intention of the legislature should control absolutely the action of the judiciary. Where that intention is clearly ascertained, the courts have no other duty to perform than to execute the legislature's will, without any regard to their own views as to the wisdom or justice of the particular enactment. * * * It is dangerous to attempt to be wiser than the law, and when its requirements are plain and positive, the courts are not called upon to give reasons why it was enacted. And courts should adhere to the cardinal rule that the judicial functions are always best discharged by an honest and earnest desire to ascertain and carry into effect the intention of the law-making body." Beck v. Commrs. Of Medina Cty. (1883), 9 Ohio Dec.Reprint 108.
 {¶ 32} The Ohio Supreme Court has recognized the legislature's authority to modify the law:
 "The law itself, as a rule of conduct, may be changed at the will * * * of the Legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances." Leis v. Cleveland Ry. Co. (1920), 101 Ohio St. 162, 165.
 {¶ 33} In this case, this Court finds that the legislature, presumed to have been aware of the holding in the Clymer case, took swift and affirmative actions to supplement the prevailing wage law to require the payment of the prevailing rate to "laborers, workmen or mechanics upon any material to be used upon or in connection [with public works]." Am. S.B. No. 294. The amended statute expressly addressed the issue of an off-site employee's right to be paid at the prevailing rate. The current version of the statute mirrors the same intent of the legislature to include off-site employees within the purview of the prevailing wage *Page 15 
law. R.C. 4115.05 provides for the prevailing rate of wages to be paid to laborers, workers, or mechanics upon public works. That section further expressly provides:
 "The prevailing rate of wages to be paid for a legal day's work, to laborers, workers, or mechanics, upon any material to be used in or in connection with a public work, shall be not less than the prevailing rate of wages payable for a day's work in the same trade or occupation in the locality within the state where such public work is being performed and where the material in its final or completed form is to be situated, erected, or used."
 {¶ 34} R.C. 4115.10(A) mandates that no entity that constructs a public improvement with its own forces shall violate Ohio's Prevailing Wage Law, R.C. 4115.03 to 4115.16. That section further prescribes a penalty for any such entity "who fails to pay the rate of wages so fixed[.]" R.C. 4115.10(A). Although this section provides an express recovery for "[a]ny employee upon any public improvement" who has not been paid the fixed rate, a reading of this provision in its entirety indicates that the penalty provision is applicable for any violation of the wage provisions, necessarily including R.C. 4115.05 regarding workers upon materials to be used in or in connection with the public work.
 {¶ 35} Our view also comports with the purposes behind the prevailing wage law, enunciated by the Ohio Supreme Court:
 "The prevailing wage law evidences a legislative intent to provide a comprehensive, uniform framework for, inter alia, worker rights and remedies vis-à-vis private contractors, subcontractors and materialmen engaged in the construction of public improvements in this state. * * * Above all else, the primary purpose of the prevailing wage law is to support the integrity of the collective bargaining *Page 16 
process by preventing the undercutting of employee wages in the private construction sector." Internatl. Union of Operating Engineers, Local 18 v. Dan Wannemacher Masonry Co. (1988), 36 Ohio St.3d 74, 78.
 {¶ 36} In addition, this Court finds support for our position in Judge Zimmerman's dissent in Clymer. The dissent opined that the "intimate connection between the gravel pit and the road construction work, geographically and otherwise," entitled the gravel pit workers to receive the prevailing rate of wages in that case. Clymer,128 Ohio St. at 365. This idea is mirrored in the legislature's 1935 amendment to the prevailing wage law, which required the payment of the prevailing wage to workers upon materials to be used in or in connection with a public improvement. The legislature has maintained that same requirement within the current version of the statute.
 {¶ 37} The requirement that the work be done "upon any material to be used in or in connection with a public work," mandates such an "intimate connection," thereby foreclosing Gene's argument that a break from the holding in Clymer would create unwieldy results. Gene's speculated that it would be a logistical nightmare to track all materials used in a public improvement to ensure that those off-site fabricators were paid the correct wage. The statute, however, includes a presupposition that the materials at issue must be fabricated specifically "to be used" in regard to the project, rather than pre-fabricated materials made in the ordinary course of business by suppliers. This Court surmises that it would not be difficult to trace materials made specifically for a particular public *Page 17 
improvement to determine which off-site workers would be subject to the prevailing wage law.
 {¶ 38} R.C. 4115.05 is also clear in its mandate of which prevailing rate must be paid to off-site workers. The statute expressly states that the rate of wages shall be that in the location "where such public work is being performed and where the material in its final or completed form is to be situated, erected, or used." Accordingly, Gene's argument that it would be too cumbersome to determine which prevailing wage is applicable is unfounded.
 {¶ 39} Based on the above reasoning, this Court finds that the Ohio Supreme Court's holding in Clymer, that off-site workers are not entitled to receive the prevailing wage, has been superseded by the legislature in its amendment and express supplementing of the prevailing wage law. The statute now expressly provides for the payment of the prevailing rate of wages to employees who fabricate materials to be used in or in connection with a public work. Accordingly, this Court finds that Gene's failed to meet its initial burden under Dresher to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law on the issue of whether an off-site shop worker who fabricates materials to be used in or in connection with a public improvement is subject to the prevailing wage law. Accordingly, the trial court erred by granting summary judgment in favor of Gene's on this issue. Local 33's second assignment of error is sustained. *Page 18 
 GENE'S CROSS-ASSIGNMENT OF ERROR "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING GENE'S REFRIGERATION, HEATING AIR CONDITIONING, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO R.C. 4115.16(D), AND FINDING THAT PLAINTIFF'S ACTION WAS NOT UNREASONABLE OR BROUGHT WITHOUT FOUNDATION."
 {¶ 40} Gene's argues that the trial court abused its discretion by denying its motion for attorney fees and costs pursuant to R.C.4115.16(D).
 {¶ 41} R.C. 4115.16(D) provides:
 "Where, pursuant to this section, a court finds a violation of sections 4115.03 to 4115.16 of the Revised Code, the court shall award attorney fees and courts costs to the prevailing party. In the event that court finds that no violation has occurred, the court may award court costs and attorney fees to the prevailing party, other than to the director or the public authority, where the court finds that action brought was unreasonable or without foundation, even though not brought in subjective bad faith."
 {¶ 42} Based on our disposition of Local 33's two assignments of error, Gene's is no longer "the prevailing party." Accordingly, this Court need not reach the merits of Gene's cross-assignment of error as it is now rendered moot. App.R. 12(A)(1)(c).
 III. {¶ 43} Local 33's two assignments of error are sustained. We decline to address Gene's cross-assignment of error. The judgment of the Medina County Court of Common Pleas is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion. *Page 19 
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellee/cross-appellant.
DONNA J. CARR FOR THE COURT
MOORE, J. CONCURS
[1] Chief Justice Moyer, joined by Justices Cook and Lundberg Stratton, dissented, finding that the union did not have standing as an interested party, because the subcontractors' employees had not executed authorization forms until after Local 33 filed its complaint. The dissent did not address the issue of whether the execution of authorization forms only authorizes a union to file suit on behalf of those employees who affirmatively authorized representation. *Page 20