[Cite as *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Gene's Refrigeration, Heating & Air Conditioning, Inc.*, 122 Ohio St.3d 248, 2009-Ohio-2747.]

SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION,

LOCAL UNION NO. 33, APPELLEE, *v*. GENE'S REFRIGERATION,

HEATING & AIR CONDITIONING, INC., APPELLANT.

[Cite as *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Gene's Refrigeration, Heating & Air Conditioning, Inc.*,

122 Ohio St.3d 248, 2009-Ohio-2747.]

*Labor — Prevailing wage — R.C. 4115.03(F) — Labor organization that obtains*
*authorization to represent one employee does not have standing as an*
*"interested party" to pursue violations of prevailing-wage law on another*
*employee's behalf — R.C. 4115.05 — Prevailing-wage requirement does*
*not extend to persons whose work is performed off the site of the public*
*improvement project.*

(No. 2008-0780 — Submitted January 14, 2009 — Decided June 17, 2009.)

APPEAL from the Court of Appeals for Medina County,

No. 06CA0104-M, 2008-Ohio-1005.

_____

**SYLLABUS OF THE COURT**

1. A labor organization that obtains written authorization to represent one
   employee does not have standing as an "interested party" under R.C.
   4115.03(F) to pursue violations of the prevailing-wage law on behalf of
   any other employee on the project.

2. R.C. 4115.05 applies only to persons whose work is performed directly on the
   site of the public improvement project. (*Clymer v. Zane* (1934), 128 Ohio
   St. 359, 191 N.E. 123, approved and followed.)

_____

**LUNDBERG STRATTON, J.**

{¶ 1}  This case involves two legal issues interpreting Ohio's prevailing-
wage laws.  First, we must determine whether a labor organization that obtains

written authorization to represent one employee has standing as an "interested party" to pursue violations of prevailing-wage law on behalf of any other employee on the project. Second, we must determine whether shop employees who work off-site manufacturing materials to be used in or in connection with a public improvement project are entitled to prevailing-wage rates.

{¶ 2} For the reasons that follow, we hold that a labor organization that is an "interested party" under R.C. 4115.03(F) may file a prevailing-wage complaint only on behalf of the employee who specifically authorized the action, and R.C. 4115.05 applies only to persons whose work is performed directly on the site of the public improvement project. Therefore, we reverse the judgment of the court of appeals and reinstate the trial court's judgment.

## I. Facts

{¶ 3} Sheet Metal Workers' International Association, Local No. 33, appellee ("Local 33"), is a bona fide labor organization that negotiates with employers concerning wages, hours, terms, and conditions of employment. Gene's Refrigeration, Heating & Air Conditioning, Inc., appellant ("Gene's"), is a contractor as defined by Ohio Adm.Code 4101:9-4-02(H) that performs both field construction work and in-shop sheet-metal fabrication. Gene's was awarded a contract for the construction of the Grainger Fire Station ("project") located in Medina County, Ohio. The project was a public improvement within the meaning of Ohio's prevailing-wage law, R.C. 4115.03 et seq.

{¶ 4} Local 33 filed a complaint against Gene's for violations of the prevailing-wage law on the Grainger project. Local 33 was not the bargaining representative for Gene's employees; however, it alleged that it had standing as an "interested party" under R.C. 4115.03(F)(3) based upon the written authorization of Elie Cherfan, an employee in Gene's off-site fabrication shop. The complaint asserted multiple prevailing-wage violations by Gene's that involved reporting, recordkeeping, notification, and wage requirements on the entire project.

2

**{¶ 5}** The parties filed cross-motions for summary judgment on two legal issues: whether Local 33 has standing to sue on behalf of anyone other than Elie Cherfan, and whether the prevailing-wage law applies to employees who performed shop work off the project site. The trial court denied the motions.

**{¶ 6}** The parties filed a joint motion to reconsider and stipulated to the following facts. Gene's performs both construction work on the site and sheet-metal fabrication of duct work in an off-site shop. Elie Cherfan was an employee of Gene's in the off-site fabrication shop. Gene's paid employees of its off-site fabrication shop, including Elie Cherfan, at regular nonprevailing-wage rates.

**{¶ 7}** Elie Cherfan gave written authorization to Local 33 to represent him for purposes of bringing a prevailing-wage complaint and enforcement action. In July 2005, Local 33 filed an administrative prevailing-wage complaint as an interested party pursuant to R.C. 4115.16(A) with the director of the Ohio Department of Commerce, asserting violations of Ohio's prevailing-wage law. After more than 60 days elapsed from the date of filing with no ruling by the director, Local 33 filed a complaint in the Court of Common Pleas of Medina County as permitted by R.C. 4115.16(B) with similar allegations of prevailing-wage infractions.

**{¶ 8}** Upon reconsideration, a magistrate concluded that Elie Cherfan was the only employee of Gene's to expressly authorize Local 33 to represent him in this action. Thus, Local 33 had standing only on behalf of Elie Cherfan. Further, the shop work that Cherfan performed off-site from the public improvement project was not subject to the wage law. The magistrate granted Gene's motion for summary judgment. The trial court adopted the magistrate's decision.

**{¶ 9}** The court of appeals reversed and remanded, concluding that Cherfan's written authorization allowing Local 33 to represent him was sufficient to impute standing to Local 33 with respect to the entire project and all of Gene's

employees. Medina App. No. 06CA0104-M, 2008-Ohio-1005, ¶ 22. The court further held that R.C. 4115.05 expressly provides for payment of the prevailing wage to off-site employees, in particular, employees who fabricate materials to be used in or in connection with a public work. Thus, the court held, *Clymer v. Zane* (1934), 128 Ohio St. 359, 191 N.E. 123, has been superseded by the legislature. Id. at ¶ 39.

**{¶ 10}** The cause is before this court upon the acceptance of a discretionary appeal. 118 Ohio St.3d 1505, 2008-Ohio-3369, 889 N.E.2d 1024.

## II. Standing as an "Interested Party"

**{¶ 11}** R.C. 4115.16(A) authorizes an "interested party" to file a complaint with the director of commerce alleging a prevailing-wage violation. R.C. 4115.16(B) authorizes the "interested party" to file a complaint in the court of common pleas of the county in which the violation allegedly occurred if the director has not ruled on the merits within 60 days. An "interested party" with respect to a particular public improvement is defined in R.C. 4115.03(F) as:

**{¶ 12}** "(1) Any person who submits a bid for the purpose of securing the award of a contract for construction of the public improvement;

**{¶ 13}** "(2) Any person acting as a subcontractor of a person mentioned in division (F)(1) of this section;

**{¶ 14}** "(3) *Any bona fide organization of labor which has as members* or *is authorized to represent employees of a person mentioned in division (F)(1) or (2) of this section* and which exists, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees;

**{¶ 15}** "(4) Any association having as members any of the persons mentioned in division (F)(1) or (2) of this section." (Emphasis added.)

**{¶ 16}** The parties have stipulated that Local 33 is an interested party under R.C. 4115.03(F)(3) on behalf of Elie Cherfan. The issue before us is

4

whether Local 33's status as an interested party based on Cherfan's authorization extends to apply to all employees of the employer on a project wide basis.

**{¶ 17}** In *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Mohawk Mechanical, Inc.* (1999), 86 Ohio St.3d 611, 716 N.E.2d 198, we examined a union's status as an "interested party" with respect to nonunion employees who worked for Mohawk, a subcontractor on a public improvement project. At the time, the union was attempting to organize Mohawk employees. When the union discovered that Mohawk was not paying prevailing wages to employees working on the project, it filed a complaint under R.C. 4115.16(A). Three Mohawk employees gave the union written authorization to pursue the action after it was filed.

**{¶ 18}** We held that the union had standing as an interested party. The employees worked for Mohawk, a subcontractor for "a person mentioned in division (F)(1)" of R.C. 4115.03, and although the union did not negotiate for these employees, at least three of them gave the union written authorization to represent them in the prevailing-wage action. Id. at 614, 716 N.E.2d 198.

**{¶ 19}** The court of appeals in the instant case relied on the statement in *Mohawk* that "[t]he statute does not require that a majority of employees authorize the representation" to support its conclusion that Cherfan's written authorization alone is sufficient to allow Local 33 to represent all employees on the project. 2008-Ohio-1005, ¶ 21, quoting *Mohawk,* 86 Ohio St.3d at 614, 716 N.E.2d 198. We do not read *Mohawk* so broadly. In *Mohawk*, the union had filed the complaint prior to obtaining authority from *any* employee. We decided that the written authorization of the three employees was sufficient for purposes of R.C. 4115.03(F)(3) and that the union need not have authorization from a majority of the employees or have represented the employees for purposes of collective bargaining in order to acquire "interested party" status.

**{¶ 20}** Furthermore, *Mohawk* is distinguishable because the three Mohawk employees worked on the public improvement job site. Here, Cherfan is employed in an off-site shop and has not established that he is entitled to the prevailing wage. Thus, his ability to represent the interests of other employees on the project is even more tenuous.

**{¶ 21}** The definition of "interested party" in R.C. 4115.03(F)(3) refers to an "*organization* of labor which * * * is *authorized to represent* employees of a person mentioned in division (F)(1) or (2)," as opposed to union members. (Emphasis added.) Thus, the union is an interested party for and may act on behalf of the employee who expressly authorized the union to act. In addition, the text of Cherfan's authorization expressly designates Local 33 to represent only Cherfan:

**{¶ 22}** "Of my own free will, I hereby authorize Sheet Metal Workers Local 33, its agents and/or representatives *to represent me* in all matters pertaining to my claims regarding any and all prevailing wage issues * * * . This authorization * * * is effective as of the date I signed it and will remain in effect until I revoke it in writing." (Emphasis added)

**{¶ 23}** The dissent in *Mohawk* aptly explained that an employee's authorization "is analogous to the creation of an attorney-in-fact relationship." *Mohawk*, 86 Ohio St.3d at 616, 716 N.E.2d 198 (Moyer, C.J., dissenting). To allow the union to bring a complaint on behalf of employees who did not authorize the union to act on their behalf would violate the employees' right to select their own legal counsel or labor representative. Thus, one employee's authorization does not extend to all remaining employees.

**{¶ 24}** Cherfan's authorization does not confer interested-party status upon Local 33 to pursue prevailing-wage violations on a projectwide basis for employees other than Cherfan. Cherfan's authorization does not convey carte blanche to the union to pursue claims on behalf of persons who have not agreed to

such actions. Therefore, we hold that a labor organization that obtains written authorization to represent one employee does not have standing as an "interested party" under R.C. 4115.03(F) to pursue violations of the prevailing-wage law on behalf of any other employee on the project, and we reverse the judgment of the court of appeals on this issue. Local 33 has standing to pursue prevailing-wage claims on behalf of Cherfan only.

### III. Prevailing Wage

{¶ 25} Next, we must determine whether the prevailing-wage law, R.C. 4115.05, applies to an employee whose work is not performed on the actual project site but who works on materials that will be used in or in connection with the project. Local 33 has filed a prevailing-wage claim on behalf of Cherfan. We must decide whether Cherfan, who fabricated ductwork for the project at Gene's off-site fabrication shop, is entitled to the prevailing wage.

{¶ 26} "The prevailing wage statutes, R.C. 4115.03 through R.C. 4115.16, require contractors and subcontractors for public improvement projects to pay laborers and mechanics the so-called prevailing wage in the locality where the project is to be performed." *J.A. Croson Co. v. J.A. Guy, Inc*. (1998), 81 Ohio St.3d 346, 349, 691 N.E.2d 655.

{¶ 27} Gene's contends that the prevailing-wage law applies only to work performed on the project site, citing *Clymer v. Zane*, 128 Ohio St. 359, 191 N.E. 123, in which this court held that persons who were working off-site in a gravel pit were not employees on the public improvement highway project (entitled to the prevailing wage) even though the project's contractor owned and operated the gravel pit and its materials were used on the project.

{¶ 28} The court of appeals in this case concluded that the prevailing-wage statutes were amended the year following *Clymer* to expressly recognize an off-site employee's right to be paid at the prevailing rate, thus superseding *Clymer*. Id., 2008-Ohio-1005, ¶ 33. The appellate court interpreted the current

version of R.C. 4115.05 as mandating prevailing wages for labor "upon any material to be used in or in connection with a public work," including work that is not performed on the project site. Id. at ¶ 39.

{¶ 29} There is no reference in R.C. 4115.05 to where the work must be performed, i.e., whether it must be directly on the project site or be performed off-site. When a statute is subject to varying interpretations, it is ambiguous and we must construe it in a manner that carries out the intent of the General Assembly. *Harris v. Van Hoose* (1990), 49 Ohio St.3d 24, 26, 550 N.E.2d 461. We look to the language of the statute, the circumstances under which the statute was enacted, legislative history, and the consequences of a particular construction when determining the intention of the legislature. R.C. 1.49; *Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless*, 113 Ohio St.3d 394, 2007-Ohio-2203, 865 N.E.2d 1275, ¶ 12.

### A. History of Prevailing-Wage Legislation

{¶ 30} Ohio enacted its first prevailing-wage statutes in 1931 "[t]o establish a fair rate of wages to be paid to workmen and mechanics employed in construction of public improvements." H.B. No. 3, 114 Ohio Laws, 116. The new legislation closely resembled the federal Davis-Bacon Act of 1931, 46 Stat. 1494, which required that laborers or mechanics employed by the contractor or any subcontractor in the construction, alteration, or repair of any public buildings be paid not less than the prevailing rate of wages for work of a similar nature.

{¶ 31} In 1932, Ohio's attorney general issued an opinion that the statutory minimum-wage rate did not apply to workers who merely furnish or deliver materials to the construction project (but do not install or fabricate). 1932 Atty.Gen.Ops. No. 4836. In 1934, this court decided *Clymer,* which held that persons working off-site in a gravel pit are not considered employees on a public highway project that used the gravel and are not entitled to the prevailing wage. *Clymer*, 128 Ohio St. 359, 191 N.E. 123.

**{¶ 32}** In 1935, the General Assembly amended the prevailing-wage law, adding the "material to be used" language that now appears in R.C. 4115.05 and is at issue here.[1] The amendment does not reflect any legislative history or explanation for the changes. There is no indication that the amendment was intended to legislatively overrule or supersede *Clymer,* and Local 33 offers no support for that assertion. Although R.C. 4115.05 has since been amended several times since 1935, the "material to be used" language at issue has remained consistent.[2]

### B. Statutory Interpretation

**{¶ 33}** The appellate court relied upon the language in the sixth paragraph of R.C. 4115.05: "The prevailing rate of wages to be paid for a legal day's work, to laborers, workers, or mechanics, *upon any material to be used in or in connection with a public work*, shall be not less than the prevailing rate of wages payable for a day's work in the same trade or occupation in the locality within the state where such public work is being performed and where the material in its final or completed form is to be situated, erected, or used." (Emphasis added.)

**{¶ 34}** R.C. 4115.05 does not specifically refer to persons whose work is conducted away from or off the project site. Other paragraphs within R.C. 4115.05 and elsewhere in the prevailing-wage statutory scheme, however, provide insight into the scope of the law. First, R.C. 4115.05 provides that "[t]he prevailing rate of wages to be paid * * * to laborers, workers, or mechanics *upon*

---

1. G.C. 17-4a provided: "The wages to be paid for a legal day's work, to laborers, workmen or mechanics upon any material to be used upon or in connection [with the public work], shall not be less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work on, about or in connection with such labor is performed in its final or completed form is to be situated, erected or used * * *." 116 Ohio Laws, Part I, 207.

2. G.C. 17-4a; 116 Ohio Laws 206; 118 Ohio Laws 587; 128 Ohio Laws 936; 131 Ohio Laws 993; 135 Ohio Laws, Part II, 1148; 137 Ohio Laws, Part II, 3854; 141 Ohio Laws, Part II, 2836; 146 Ohio Laws, Part V, 9632; 148 Ohio Laws, Part II, 4608.

*public works* shall not be less * * * than the prevailing rate of wages then payable in the same trade or occupation in the locality where such public work in being performed * * *," and "[e]very contract for a public work shall contain a provision that each laborer, worker, or mechanic, employed by such contractor, subcontractor, or other person *about or upon such public work*, shall be paid the prevailing rate of wages provided in this section." (Emphasis added.)

{¶ 35} In addition, R.C. 4115.10(A) provides that "[a]ny employee *upon any public improvement* * * * who is paid less than the fixed rate of wages applicable thereto may recover * * * the difference between the fixed rate of wages and the amount paid * * * ." (Emphasis added.) R.C. 4115.10(B) authorizes "[a]ny employee *upon any public improvement* who is paid less than the prevailing rate" to file a complaint with the director of commerce. (Emphasis added.) R.C. 4115.032 refers to "[c]onstruction *on* any project" and "contractors and subcontractors working *on* such projects" who "shall be subject to and comply with sections 4115.03 to 4115.16 of the Revised Code." (Emphasis added.) Thus, the law provides that only those on the job site may file a complaint and recover if prevailing wage is not paid, and only those working on the public improvement projects are subject to prevailing-wage statutes.

{¶ 36} In addition, the director of the Department of Commerce is charged with overseeing enforcement of prevailing-wage laws and with determining the applicable prevailing wage for a project. R.C. 4115.032. The schedule of rates must be posted "on the site of the work." R.C. 4115.07. Therefore, the isolated reference in R.C. 4115.05 to "any material" does not comport with the intent of the overall statutory scheme.

{¶ 37} In 1990, the Department of Commerce adopted administrative regulations, Ohio Adm.Code 4101:9-4 et seq., to facilitate administering the prevailing-wage laws. These regulations were adopted following extensive hearings in which both industry employers and organized labor had opportunities

to voice their concerns. They likewise refer to work performed *on* the job site and do not refer to off-site workers as being entitled to prevailing-wage rates.

{¶ 38} Statutes and regulations that relate to the same general subject matter may be read in pari materia in order to discover and carry out legislative intent. *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, ¶ 13. Construing the language of the entire prevailing-wage statutory scheme along with related regulations, we conclude that the General Assembly did not overrule *Clymer*, and R.C. 4115.05 does not mandate that prevailing wages be paid to persons who work off-site even if they are working on materials to be used on or in connection with the project. The phrase "any material to be used upon or in connection with" in R.C. 4115.05 must be interpreted as referring to materials on the job site.

### C. Industry Custom and Practice

{¶ 39} Several labor and trade organizations filed amicus briefs in this case. They acknowledge that the construction industry has continued to follow *Clymer* since the laws were amended in 1935 and applies prevailing-wage laws only to workers *on* the project site. The position advocated by Local 33 and its amici constitutes a departure from current practice. If the General Assembly had intended to legislatively overrule *Clymer* and expand the prevailing-wage mandates more than 70 years ago, the applicability of the law would surely have been challenged before now. The appellate court's conclusion is contrary to current industry standards and practices that continue to apply *Clymer*.

### D. Unworkable Consequences

{¶ 40} The appellate court modified the prevailing-wage statute to create a rule for off-site workers. The appellate court tailored application of its interpretation to those off-site workers with an "intimate connection" between the material to be used in or in connection with the public work and the off-site work, thereby adding its own qualifications to the statutory language. The court

reasoned that this would enable employers to trace materials made specifically for a particular public work for purposes of paying the off-site workers the prevailing wage. 2008-Ohio-1005, at ¶ 37. Thus, although the statute did not so specify, the court of appeals concluded, with respect to the off-site fabrication work, that the materials must be fabricated specifically for the project rather than prefabricated materials made in the ordinary course of business by suppliers for use by any and all purchasers. Id.

{¶ 41} However, the dissenting judge in the appellate court questioned the majority's modified interpretation: "The majority attempts to limit the practical effects of its holding, but one might fairly ask at what point the fabrication process achieves the 'intimate connection' that the majority envisions. When a contractor produces duct work in the normal course of its business for its own use in construction activities, is the connection established when some of its materials are used in relation to a public improvement? Must the fabricator of materials that are incorporated in machines used in job assembly pay the prevailing wage because the machine is ultimately used 'in connection with a public work'? When certain off-site employees are paid for fabrication of materials, how is the fraction of their time spent on those items that become part of a public improvement to be determined and compensated out of an entire working day? Must a contractor now record those fractions of working time spent by off-site employees whose work bears a tangential relationship to material used in public improvements? Simply put, the rule is unworkable." 2008-Ohio-1005, ¶ 50.

{¶ 42} The rule created by the appellate court in this case changes the industry custom and practice in place since *Clymer*. It interjects uncertainty into a process by creating a new standard. However, the court is not the proper forum to determine these difficult policy issues raised by the parties and amici. These issues should be addressed by the General Assembly in a public forum with input from all competing interests, including all labor organizations affected. Such a

departure from current prevailing-wage law, custom, and practice properly belong in the legislative domain as a matter of public policy.

{¶ 43} Therefore, construing the prevailing-wage statutory scheme and administrative regulations in pari materia, and in conjunction with industry custom and practice, we hold that R.C. 4115.05 applies only to persons whose work is performed directly at the site of the public improvement project and that *Clymer v. Zane* has not been legislatively superseded.

## IV. Conclusion

{¶ 44} Local 33 is an interested party under R.C. 4115.03(F) on behalf of Elie Cherfan only, based upon his written authorization. This interested-party status does not extend to any other employee on a projectwide basis. In addition, R.C. 4115.05 applies only to persons whose work is performed directly on the site of the public improvement project. Because Elie Cherfan did not work on the project site, he is not entitled to the prevailing-wage rate. Consequently, we reverse the judgment of the court of appeals and reinstate the trial court's judgment.

Judgment reversed.

MOYER, C.J., and O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 45} I dissent from the majority's holdings as to standing and as to whether the prevailing-wage statute applies to the facts of this case.

{¶ 46} As for standing, the majority misinterprets the statutes at issue. Being "authorized to represent employees" makes a labor organization an "interested party" under R.C. 4115.03(F). Then, we proceed to R.C. 4115.16(B). As an "interested party," that labor organization pursuant to R.C. 4115.16(B)

"may file a complaint in the court of common pleas of the county in which the violation is alleged to have occurred." No statute limits a labor organization's standing to the person or persons who authorize the labor organization to represent employees. The authorization makes the labor organization an "interested party." The labor organization itself, upon filing, becomes the party in the lawsuit– notice that there is no "et al." after the labor organization's name in our own case heading. It is filing the complaint on behalf of itself; it is raising the issue of an employer's failure to pay the prevailing wage, in the same way a contractors' association could file a complaint pursuant to R.C. 4115.03(F)(4)— under which such an association is an "interested party"—and 4115.16. Would the majority worry about how a contractors' association did not represent *any* of the workers who might benefit from a successful claim?

{¶ 47} As for the prevailing-wage issue, let us look at the facts of this case. Gene's Refrigeration, Heating & Air Conditioning, Inc. ("Gene's") bid on the Granger fire station project. Gene's employees fabricated the ductwork that other Gene's employees would install. This ductwork was not purchased off the shelf from a vendor and was not already in Gene's inventory. It was specifically fabricated for this specific job.

{¶ 48} We move to the statute:

{¶ 49} "The prevailing rate of wages to be paid for a legal day's work, to laborers, workers, or mechanics, *upon any material to be used in or in connection with a public work*, shall be not less than the prevailing rate of wages payable for a day's work in the same trade or occupation in the locality within the state where such public work is being performed and *where the material in its final or completed form is to be situated, erected, or used*." (Emphasis added.) R.C. 4115.05.

{¶ 50} The ductwork here was "material to be used in * * * a public work." We really need not go further. But the majority does; in its analysis of

14

R.C. 4115.05, the majority installs ellipses where the statute establishes that the prevailing wage for work on materials used in connection with the public work shall be the prevailing wage in the locality "where the material in its final or completed work or completed form is to be situated, erected, or used." The statute thus contemplates that some materials for a public work might sometimes be fabricated off-site and establishes that in such a case, the off-site work still qualifies for the prevailing wage; the wage to be paid is the prevailing wage in the locality of the public work. The majority willfully ignores that section of R.C. 4115.05 and instead embarks on jurisprudence by preposition, insisting that work "on" or "upon" a public work connotes geographical presence rather than the purpose of the work. Under the majority's unique application of prepositions, working "on" a judicial opinion would require the writer to perch atop his or her computer screen while crafting an opinion. The majority's locus focus is hocus pocus.

**{¶ 51}** The prevailing-wage statutory scheme at issue in this case is not ambiguous and does not require any divination of legislative intent. That the statute changed after this court's decision in *Clymer v. Zane* (1934), 128 Ohio St. 359, 191 N.E. 123, is remarkable only for the reason that *Clymer* is good precedent only for a statute that no longer exists. The statute changed after *Clymer* by adding the "material to be used" language that is at issue in this case. The majority relates that "[t]he amendment does not reflect any legislative history or explanation for the changes. There is no indication that the amendment was intended to legislatively overrule or supersede *Clymer*, and Local 33 offers no support for that assertion." Majority opinion at ¶ 32. First, our job is to interpret the statute as written, not to puzzle over motivations. Second, statements of legislative intent and concomitant referrals to specific holdings of the Ohio Supreme Court are only recent developments. Legislative etiquette has changed; formerly, it was a cardinal sin to insert legislative intent into a bill, and that policy

was strictly enforced by legislative leaders and by the Legislative Service Commission. If the General Assembly had intended to legislatively overrule *Clymer,* it certainly would *not* have said so.

{¶ 52} The majority foresees doom if Local 33 were to prevail today. But let us concern ourselves only with this case, not a parade of horribles. In this case, Gene's employees were working on site-specific fabrications; the material they created was for the public project and was not fungible. The employees at issue worked for Gene's, who was a winning bidder on the public project; they were not once- or twice-removed employees of other companies. Any speaker of English would agree that creating ductwork in an off-site shop for the Granger fire station project would be considered working "on" the Granger fire station project. The only relevant question in this case is whether Ohio's prevailing-wage statutes apply to the Gene's workers involved in preparing ductwork for installation in the Granger fire station. The answer is assuredly "yes."

_____

Cosme, D'Angelo & Szollosi Co., L.P.A., and Joseph M. D'Angelo, for appellee.

Ross, Brittain & Schonberg Co., L.P.A., Alan G. Ross, and Nick A. Nykulak, for appellant.

Bricker & Eckler, L.L.P., and Luther L. Liggett Jr., urging affirmance for amici curiae Sheet Metal and Air Conditioning Contractors' National Association of Cleveland and Sheet Metal & Roofing Contractors Association of the Miami Valley.

Cosme, D'Angelo & Szollosi Co., L.P.A., and Joseph M. D'Angelo, urging affirmance for amicus curiae Sheet Metal Contractors Association of Northwest Ohio, Inc.

Hunter, Carnahan, Shoub & Byard and Michale J. Hunter, urging affirmance for amicus curiae Ohio State Building and Construction Trades Council, AFL-CIO.

Sherman, Dunn, Cohen, Leifer & Yellig, P.C., and Terry R. Yellig, urging affirmance for amicus curiae Building and Construction Trades Department, AFL-CIO.

Schottenstein, Zox & Dunn Co., L.P.A., and Roger L. Sabo, urging reversal for amici curiae Ohio Contractors Association and Associated General Contractors of Ohio.

Baker & Hostetler, L.L.P., Elliot S. Azoff, and Jeffrey R. Vlasek, urging reversal for amici curiae Construction Employers Association, Associated General Contractors of Ohio, Cleveland Division, Associated General Contractors of Ohio, Akron Division, Carpenter Contractors Association, Concrete Contractors Association, Deep Foundation Contractors Association, Glazing Contractors Association of Northeast Ohio, Greater Cleveland Roofing Contractors Association, Interior Systems Contractors Association, Inc., Mason Contractors Association, Millwright Employers Association, North Central Ohio Council of Employers of Bricklayers and Allied Craftworkers, Residential Carpenter Contractors Association, Sheet Metal and Air Conditioning Contractors' National Association of North Central Ohio, Inc., Steel & Iron Contractors Association, and Tile-Marble-Terrazzo Contractors.

McNamara & McNamara, L.L.P., Keith McNamara, and Jonathan M. Bryan, urging reversal for amicus curiae Ohio Ready Mixed Concrete Association.

Anthonio C. Fiore, urging reversal for amici curiae Ohio Chamber of Commerce, Dayton Area Chamber of Commerce, Council of Smaller Enterprises, Greater Akron Chamber of Commerce, Youngstown/Warren Regional Chamber, Toledo Regional Chamber of Commerce, and Cincinnati USA Regional Chamber.

Ross, Brittain & Schonberg Co., L.P.A., Alan G. Ross, and Nick A. Nykulak, urging reversal for amicus curiae Associated Builders & Contractors of Ohio, Inc.

———————————