[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife,* Slip Opinion No. 2015-Ohio-3731.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3731

RISNER, APPELLANT, *v.* OHIO DEPARTMENT OF NATURAL RESOURCES, OHIO DIVISION OF WILDLIFE, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife,* Slip Opinion No. 2015-Ohio-3731.]

*Civil restitution—Department of Natural Resources, Division of Wildlife—R.C. 1531.201—Antlered white-tailed deer—Hunting without permission— Restitution ordered in prior criminal action—R.C. 1531.201(B) permits the Department of Natural Resources to recover the civil restitution value even though the department was awarded possession of the deer meat as a result of a conviction of violating R.C. Chapter 1531 or 1533 or division rule.*

(No. 2014-242—Submitted February 25, 2015—Decided September 17, 2015.)

APPEAL from the Court of Appeals for Huron County,

No. H-13-009, 2013-Ohio-5902.

_____

**KENNEDY, J.**

{¶ 1} In this appeal from the Sixth District Court of Appeals, we consider whether appellee, Ohio Department of Natural Resources, Division of Wildlife ("ODNR"), has the authority to seek, pursuant to R.C. 1531.201(B), the recovery of the civil restitution value of an antlered white-tailed deer taken in violation of R.C. Chapter 1533 when ODNR had seized parts of the deer as evidence during the criminal investigation and those parts had been subsequently forfeited to ODNR in the criminal action. Appellant, Arlie Risner, advances the following proposition of law: "Pursuant to R.C. 1531.201(B), ODNR cannot take possession of and seek the restitution value of an antlered white-tailed deer taken in violation of R.C. Chapter 1533."

{¶ 2} For the reasons that follow, R.C. 1531.201 is unambiguous and clearly expresses the intent of the legislature. Therefore, we hold that R.C. 1531.201(C) mandates that ODNR recover the civil restitution value of an antlered white-tailed deer with a gross score of more than 125 inches from an offender who has been convicted of a violation of R.C. Chapter 1531 or 1533 or division rule. We further hold that R.C. 1531.201(B) permits ODNR to file a civil action to recover the civil restitution value even though it had seized the deer meat and antlers as evidence in the criminal investigation and was awarded possession of those items as a result of a conviction for a violation of R.C. Chapter 1531 or 1533 or division rule. We affirm the judgment of the court of appeals.

## I. Facts and Procedural History

{¶ 3} In November 2010, ODNR wildlife officers began investigating a complaint that Risner was hunting on CSX Railway property without written permission. During the investigation, the wildlife officers discovered a tree stand, deer entrails and organs, and a blood trail on CSX property. Samples of the organs and blood were taken as evidence. As part of the investigation, the wildlife officers seized a set of deer antlers from a taxidermist and deer meat from

a butcher, both of which had been brought in by Risner. The wildlife officers also paid the butcher $90 for the remaining amount owed for the deer-processing fee.

{¶ 4} The wildlife officers took the antlers to be measured. The official score was 228 6/8 inches, which is considered to be an extraordinarily large and unusual deer in Ohio.

{¶ 5} Blood and organ samples, along with samples of the processed meat and tissue collected from the antler skull plate, were sent to a lab for DNA testing. Testing confirmed that all the samples came from one white-tailed deer.

{¶ 6} In January 2011, Risner was charged with hunting without permission, a violation of R.C. 1533.17. The next month, he pled no contest. The court found Risner guilty and imposed a $200 fine, restitution of $90 to ODNR for the deer-processing fee, and court costs of $55. The court also ordered the meat forfeited to ODNR and suspended Risner's Ohio hunting license for one year. A few months later, the court ordered the antlers forfeited to ODNR pursuant to R.C. 2981.12.

{¶ 7} In an April 2011 letter, ODNR notified Risner that because of his conviction, he owed $27,851.33 in restitution to the state pursuant to R.C. 1531.201. ODNR further informed Risner that his Ohio hunting license was immediately revoked and he would not be able to obtain another license until restitution was made in full.

{¶ 8} In May 2012, Risner filed a declaratory-judgment action against ODNR. He alleged that an order of restitution under R.C. 1531.201 was illegal and unconstitutional because the state had taken possession of the deer, in lieu of restitution, in the criminal proceeding. ODNR filed a counterclaim under R.C. 1531.201 to recover the restitution value of the deer. The trial court, without addressing Risner's constitutional claims, concluded that the plain language of R.C. 1531.201 prevented ODNR from seeking restitution for the deer after ODNR had been awarded possession of the deer and antlers in prior proceedings.

**{¶ 9}** ODNR appealed the trial court's decision to the Sixth District Court of Appeals. The Sixth District held that the plain meaning of R.C. 1531.201 did not "restrict ODNR from bringing a civil action to recover the restitution value if wildlife officers ha[d] already seized parts of the wild animal." 2013-Ohio-5902, 8 N.E.3d 330, ¶ 21 (6th Dist.). The court reversed the trial court's judgment and remanded for the trial court to address the constitutional questions raised in Risner's motion for summary judgment.

## II. Law and Analysis

**{¶ 10}** Risner contends that the plain language of R.C. 1531.201(B) permits ODNR to seek either possession of the deer Risner had killed or restitution for the deer. But, Risner contends, it may not seek both. Risner asserts that ODNR is barred from seeking restitution for the deer because it had already taken possession of the deer by seizing the antlers and meat during the criminal investigation and obtaining an order of forfeiture for those items at the conclusion of the criminal action.

**{¶ 11}** In response, ODNR contends that the restitution imposed upon Risner was mandatory under R.C. 1531.201(C) and that its attempt to recover restitution is not affected by an order imposed in a criminal proceeding. ODNR further states that an examination of the language of R.C. 1531.201 permits it to recover both the poached animal and the restitution value of the animal. Finally, ODNR asserts that the legislature intended R.C. 1531.201 to be expansive and that restitution is a deterrent to poaching.

**{¶ 12}** When interpreting a statute, a court's paramount concern is legislative intent. *State ex rel. United States Steel Corp. v. Zaleski*, 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 12. "[T]he intent of the lawmakers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the lawmaking body, there is no occasion to resort to other means of interpretation."

*Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. We apply the statute as written, *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, ¶ 20, and we refrain from adding or deleting words when the statute's meaning is clear and unambiguous, *Armstrong v. John R. Jurgensen Co.*, 136 Ohio St.3d 58, 2013-Ohio-2237, 990 N.E.2d 568, ¶ 12. However, "[i]n reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." *State v. Wilson*, 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997). *See also* R.C. 1.42.

{¶ 13} R.C. 1531.201 states:

(B) The * * * division of wildlife * * * may bring a civil action to recover possession of or the restitution value of any wild animal held, taken, bought, sold, or possessed in violation of this chapter or Chapter 1533. of the Revised Code or any division rule against any person who held, took, bought, sold, or possessed the wild animal.

* * *

(C)(1) In addition to any restitution value established in division rule, a person who is convicted of a violation of this chapter or Chapter 1533. of the Revised Code or a division rule governing the holding, taking, buying, sale, or possession of an antlered white-tailed deer with a gross score of more       than one hundred twenty-five inches also shall pay an additional restitution value * * *.

* * *

(D) Upon conviction of holding, taking, buying, selling, or possessing a wild animal in violation of this chapter or Chapter

1533. of the Revised Code, or a division rule, the chief shall revoke until payment of the restitution value is made each hunting license * * * issued to that person under this chapter or Chapter 1533 of the Revised Code.

* * *

(E) Nothing in this section affects the right of seizure under any other section of the Revised Code.

{¶ 14} R.C. 1531.201 is unambiguous and clearly expresses the intent of the legislature. R.C. 1531.201(B) states that ODNR may "recover possession of or the restitution value of any wild animal" in the civil action that ODNR is authorized to file against an individual who has violated R.C. Chapter 1531 or 1533 or any division rule. There is no language qualifying ODNR's authority to recover possession of the animal or its civil restitution value upon whether either had been previously awarded to ODNR in a related criminal proceeding. Rather, the only condition in R.C. 1531.201(B) for ODNR to bring a civil action is that there must have been a violation of R.C. Chapters 1531 or 1533 or a division rule.

{¶ 15} Both Risner's and the dissent's interpretation of R.C. 1531.201(B) would require the deletion of the words "bring a civil action to" from the statute, thereby preventing ODNR from taking possession of or recovering the restitution value of an animal in a civil action, and the insertion of language permitting that an award in a related criminal action was to be considered. But this court must give effect to the words used. *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53-54, 524 N.E.2d 441 (1988).

{¶ 16} Our interpretation of R.C. 1531.201(B) is supported by R.C. 1531.201(C) and (D), which are mandatory, self-executing provisions. R.C. 1531.201(C) states that a person convicted of a violation involving an antlered white-tailed deer with a gross score over 125 inches "shall pay an additional

restitution value." And R.C. 1531.201(D) states that upon a conviction involving a wild animal in violation of R.C. Chapter 1531 or 1533 or a division rule, ODNR "shall revoke" the offender's hunting license until restitution is paid. We have held that "shall" is to be " 'interpreted to make mandatory the provision in which it is contained, absent a clear and unequivocal intent that it receive a construction other than its ordinary meaning.' " *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, ¶ 19, quoting *Lakewood v. Papadelis,* 32 Ohio St.3d 1, 3-4, 511 N.E.2d 1138 (1987). R.C. 1531.201 does not contain a clear and unequivocal intent that "shall" in subsections (C) and (D) means anything other than "must." Accordingly, ODNR does not have discretion not to impose the additional civil restitution required by R.C. 1531.201(C) or not to revoke a hunting license as required by R.C. 1531.201(D). Contrary to the dissent's assertion, these are the only actions mandated by R.C. 1531.201; recovering possession of the animal is not mandated by R.C. 1531.201.

{¶ 17} Additionally, it is the violation of R.C. Chapter 1531 or 1533 or a division rule—and only the violation—that triggers the mandatory duties in R.C. 1531.201(C) and (D). The construction advanced by Risner would render meaningless these unequivocal mandates imposed upon ODNR by the legislature. We have repeatedly stated that a construction that renders a provision superfluous, meaningless, or inoperative should be avoided. *Boley,* 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, at ¶ 21.

{¶ 18} Last, in R.C. 1531.201(E), the legislature has specifically stated that R.C. 1531.201 does not affect the "right of seizure under any other section of the Revised Code." *E.g.,* R.C. 1531.13 (authorizing law enforcement and wildlife officers to seize a "wild animal or any part of a wild animal taken or had in possession contrary to law or division rule"). "Any" means "all." *Webster's Third New International Dictionary* 97 (2002). Because R.C. 1531.201(E) "is phrased in broad, sweeping language, we must accord it broad, sweeping

application." *State ex rel. Mager v. State Teachers Retirement Sys. of Ohio,* 123 Ohio St.3d 195, 2009-Ohio-4908, 915 N.E.2d 320, ¶ 16. The legislature did not limit the options for enforcing wildlife laws. To read R.C. 1531.201(B) as requiring ODNR to choose between possession or civil restitution affects the state's "right of seizure" and is contrary to the legislature's express intent.

{¶ 19} Accordingly, reading the statute as a whole, R.C. 1531.201 operates by its clear terms as follows: upon a conviction in violation of R.C. Chapter 1531 or 1533 or division rule involving a white-tailed deer with a gross score of more than 125 inches, ODNR is required to recover civil restitution from the offender, *see* R.C. 1531.201(C), and revoke the offender's hunting license until payment of the restitution value is made, *see* R.C. 1531.201(D). ODNR has no discretion with respect to either civil restitution or revocation of the license. In the event the offender does not pay the restitution value in order to regain the hunting license, R.C. 1531.201(B) permits ODNR to file a civil action to recover the civil restitution value even though ODNR had seized the deer meat and antlers as evidence in the criminal investigation and was awarded possession of that evidence as a result of a conviction for a violation of R.C. Chapter 1531 or 1533 or division rule.

{¶ 20} Further, if R.C. 1531.201 were ambiguous, we would be able to determine the General Assembly's intent by looking to the statutory language, the circumstances in which the statute was enacted, legislative history, and the consequences of a particular construction to determine the legislature's intent. *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Gene's Refrigeration, Heating & Air Conditioning, Inc.,* 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, ¶ 29.

{¶ 21} In 2008, subsections (C) and (D) were added to R.C. 1531.201. 2007 Am.H.B. No. 238. Testimony presented in support of these amendments

discussed the problem Ohio faces from poachers and argued for a greater deterrence to poaching.

> Poachers don't take just one animal. There have been numerous cases in recent years involving multiple deer, turkeys, small game and sometimes endangered species for which there is no legal hunting season. Ohio's laws regarding fines and restitution for wildlife violations have not been updated in years and in many cases are so low that poachers consider them a "cost of doing business." HB 238 would change that and make poachers take our wildlife laws seriously.

Wild Animals–Restitution Value: Hearing on 2007 Am.H.B. No. 238 Before the S. Environment & Natural Resources Comm. 127th Gen. Assem. (Oct. 10, 2007) (statement of Larry Mitchell).

{¶ 22} Dave Graham, then the chief of the Division of Wildlife at ODNR, also testified:

> The * * * restitution value for a whitetail deer is $400. Having researched common prices for taking a trophy buck in a hunting preserve we found that a 190-class buck costs about $15,000. If a poacher takes an animal in this class currently it is a first degree misdemeanor with a penalty which could be between $0 and $500, jail time up to 60 days, and a civil penalty of up to $400—all at the judge's discretion. It is not uncommon in some jurisdictions for fines to be $100 or less, jail time non-existent and restitution negligible. The bottom line is that current penalties and restitution are not a deterrent to poaching.

Wild Animals–Resitution Value, Hearing on 2007 Am.H.B. No. 238 Before the H. Agriculture & Natural Resources Comm., 127th Gen. Assem. (June 13, 2007) (statement of Dave Graham, Chief, Div. of Wildlife).

{¶ 23} It is evident from these excerpts that the legislative intent in enacting R.C. 1531.201 is to preserve Ohio's wildlife for legitimate hunters and naturalists and to provide a significant deterrent to those individuals who seek to harm the state's aesthetic, economic, and recreational interests. Risner's construction eviscerates this purpose. Requiring ODNR to choose between possession of the deer's remains and restitution when a white-tailed deer of this caliber is poached removes all deterrent effect and allows the "cost of doing business" mindset to prevail. In fact, Graham's concerns are illustrated by the minimal criminal penalties that were imposed upon Risner.

{¶ 24} Finally, we would then need to read R.C. 1531.201 in pari materia with the other statutes contained in R.C. Chapter 1531 that relate to the same subject matter "to discover and carry out legislative intent." *Sheet Metal Workers' Internatl. Assn.,* 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, at ¶ 38; *see generally id*. at ¶ 33-38 (reading R.C. 4115.05 in the context of the entire prevailing-wage statutory scheme and related regulations). R.C. 1531.02 declares that the state holds the title to wild animals in trust for the benefit of the people of the state of Ohio and that a person may hunt a wild animal only in a manner prescribed by the Revised Code or division rule. Moreover, R.C. 1531.13 authorizes law-enforcement officials to seize "a wild animal or any part of a wild animal taken or had in possession contrary to law or division rule." Reading R.C. 1531.201(B) in pari materia with R.C. 1531.02 and 1531.13, we would conclude that, pursuant to R.C. 1531.201(B), ODNR has the authority to file a civil action to recover civil restitution for the deer notwithstanding ODNR having been awarded possession of the deer's remains as a result of a criminal conviction for a

violation of R.C. Chapter 1531 or 1533 or division rule. To find otherwise would strip ODNR of the authority granted to it in R.C. 1531.13.

{¶ 25} The dissent asserts that R.C. 1531.201 permits a double recovery, which violates the Double Jeopardy Clause. Regardless of the merits of this assertion, it is not properly before this court. Risner's complaint raises only the following constitutional challenges: equal protection, due process, right to trial by a jury, separation of powers, right to an open court, and right to a remedy. In his motion for summary judgment, Risner argued that R.C. 1531.201 was unconstitutional because it violated the right to trial by jury, Article I, Section 5, Ohio Constitution; the right to redress in courts, Article 1, Section 16, Ohio Constitution; and equal protection, Article 1, Section 2, Ohio Constitution. In this appeal, Risner's proposition of law focuses on the statutory interpretation of R.C. 1531.201, not on constitutional challenges.

{¶ 26} We recently reaffirmed that " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *State v. Quarterman,* 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15, quoting *State v. Childs,* 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Therefore, by failing to raise the double-jeopardy challenge in the trial court, Risner has forfeited that issue on appeal. *See Quarterman,* ¶ 15.

{¶ 27} It is, however, within this court's discretion to consider a forfeited constitutional challenge and review the trial court's decision for plain error. *Id.* at ¶ 16. An appellate court "must proceed with the utmost caution" in applying the doctrine of plain error in a civil case. *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). Plain error should be strictly limited "to the *extremely rare* case involving *exceptional* circumstances when the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of

the underlying judicial process itself." (Emphasis sic.) *Id.* at 122. The burden of demonstrating plain error rests with Risner. *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17. Risner has not shown that this is an error that challenges the legitimacy of the underlying judicial process, requiring the application of the plain-error doctrine.

{¶ 28} We would also do a disservice to the litigants and the trial court by considering this issue in this appeal. As stated, Risner did not raise a double-jeopardy claim at any time in the course of this litigation. We "should be hesitant to decide such matters for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination." *Sizemore v. Smith,* 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2. To echo the *Quarterman* court, "[w]e are not obligated to search the record or formulate legal arguments on behalf of the parties, because ' "appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them." ' " *Quarterman, ¶* 19*,* quoting *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983).

{¶ 29} Furthermore, we have stated that a court should avoid reaching constitutional issues if a case can be decided on other grounds. *In re Miller,* 63 Ohio St.3d 99, 110, 585 N.E.2d 396 (1992)*.* This is exactly what the trial court did; it decided, based on statutory-interpretation principles, that the plain language of R.C. 1531.201 prevented ODNR from seeking restitution. Having now concluded otherwise, we should provide the trial court with the opportunity to examine the constitutional issues that Risner has properly raised and that were not previously considered.

{¶ 30} Accordingly, these issues remain for resolution by the trial court.

### III. Conclusion

{¶ 31} R.C. 1531.201 is unambiguous and clearly expresses the intent of the legislature. Therefore, we hold that R.C. 1531.201(C) mandates that ODNR recover the civil restitution value of an antlered white-tailed deer with a gross score of more than 125 inches from an offender who has been convicted of a violation of R.C. Chapter 1531 or 1533 or division rule. We further hold that R.C. 1531.201(B) permits ODNR to file a civil action to recover the civil restitution value even though it had seized the deer's meat and antlers as evidence during the criminal investigation and was awarded possession of that evidence as a result of a conviction for a violation of R.C. Chapter 1531 or 1533 or division rule. The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER and FRENCH, JJ., concur.

O'DONNELL, LANZINGER, and O'NEILL, JJ., dissent.

_____

**O'DONNELL, J., dissenting.**

{¶ 32} Respectfully, I dissent.

{¶ 33} Arlie Risner hunted illegally on private property and killed a 20-point buck. State wildlife officers recovered deer entrails, organs, and blood at the scene and identified and seized the deer's antlers from a taxidermist and its meat from a butcher. The investigation linked Risner to the crime, and the Ohio Department of Natural Resources ("ODNR") elected to prosecute him for hunting without permission in violation of R.C. 1533.17(A). Risner pleaded no contest to that charge, and the Norwalk Municipal Court found him guilty, imposed a $200 fine, ordered $90 in restitution and a one-year suspension of his hunting license, and awarded the antlers and the meat to the state. ODNR subsequently assessed Risner an additional $27,851.33 in restitution—the value of the animal,

notwithstanding the fact that the state had recovered the deer itself—and revoked Risner's hunting and fishing licenses until he makes that payment.

{¶ 34} Risner filed this declaratory judgment action in common pleas court asserting that the assessment was illegal and unconstitutional. ODNR counterclaimed for the value of the deer. The trial court granted Risner's motion for summary judgment, finding that ODNR could not seek the restitution value of the deer when it had already been awarded possession of the deer meat and the antlers in the criminal proceeding.

{¶ 35} The court of appeals reversed and ruled that because "Mr. Risner has no title to or ownership interest in the lawfully seized wild animal parts, it is illogical to construe R.C. 1531.201(B) to require ODNR to choose between possession of the unlawfully taken parts or restitution for the unlawfully taken deer." 2013-Ohio-5902, 8 N.E.3d 330, ¶ 22 (6th Dist.). Nonetheless, the appellate court noted ODNR's concession that "the forfeited parts of the animal do have some monetary value" and stated that its "decision should not be construed to preclude Arlie Risner from arguing for an offset against the additional restitution value at a hearing on this matter." *Id.* at ¶ 25.

{¶ 36} In this court, the majority concludes that R.C. 1531.201 authorizes ODNR to seek the $27,851.33 restitution value of the animal regardless of the fact that the state has possession of the animal, explaining that "ODNR has the authority to file a civil action to recover civil restitution for the deer notwithstanding ODNR having been awarded possession of the deer," majority opinion at ¶ 24, and that "ODNR does not have discretion not to impose the additional civil restitution required by R.C. 1531.201(C)," *id.* at ¶ 16. The majority interprets R.C. 1531.201 to mandate that ONDR recover both possession of the animal *and* its restitution value.

{¶ 37} The majority misinterprets the statute.

**{¶ 38}** R.C. 1531.201(B) states that ODNR "may bring a civil action to recover possession of *or* the restitution value of any wild animal held, taken, bought, sold, or possessed" in violation of state wildlife laws. (Emphasis added.) The statute is written using the disjunctive conjunction "or," not the connective conjunction "and." It is plain and unambiguous—the state may recover either possession of the animal *or* its restitution value. The General Assembly could have authorized ODNR to recover both possession of the animal and the restitution value of the animal by using the conjunction "and," but it did not do so. And the minimum restitution value for an antlered white-tailed deer is established pursuant to administrative rule as $500, not $27,851.33. R.C. 1531.201(B); Ohio Adm.Code 1501:31-16-01(B)(14).

**{¶ 39}** Similarly, the legislature could have authorized ODNR to assess a civil penalty, as it has authorized the director of agriculture to do in connection with laws regulating the breeding and retail sale of dogs, R.C. 956.13, and the keeping of dangerous wild animals, R.C. 935.24. It also has recently authorized civil penalties to protect natural resources that, like wildlife, the state holds in trust. *See, e.g.,* R.C. 1511.11 (civil penalty for applying manure to fields in a manner that could result in its runoff into the western basin of Ohio); R.C. 1520.03 (civil penalty for diverting water); R.C. 1506.09 (civil penalty for violation of the coastal management program). But the statutes that regulate hunting do not authorize the imposition of civil penalties.

**{¶ 40}** In contrast to those provisions, which expressly authorize the assessment of a civil penalty, the General Assembly used the word "restitution" in R.C. 1531.201. *Black's Law Dictionary* 1339 (8th Ed.2004), defines "restitution" to mean the "[r]eturn or restoration of some specific thing to its rightful owner or status" or "[c]ompensation for loss; esp., full or partial compensation paid by a criminal to a victim, not awarded in a civil trial for tort, but ordered as part of a criminal sentence or as a condition of probation." As we explained in *Cincinnati*

*v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 208, 299 N.E.2d 686 (1973), "modern usage of that term includes restoration to its rightful owner and also compensation for loss or injury caused to another." Thus, restitution is not equivalent to a civil penalty.

**{¶ 41}** In *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, ¶ 27, we considered the limits of a sentencing court's discretion in ordering restitution. There, after Daniel Lalain had stolen intellectual property from his employer, Aero-Instruments, it spent $55,456 to conduct an internal investigation and an additional $7,665 to determine the value of the stolen property. Police officers executed a search warrant at Lalain's home and recovered all the stolen property. Lalain pleaded guilty to theft of property valued at $500 or more but less than $5,000, and at sentencing, the trial court ordered restitution in the amount of $63,121 to Aero-Instruments for the costs of the internal investigation and the outside audit. The court of appeals affirmed, and we accepted review to determine whether restitution was limited to the property value corresponding to the degree of the theft conviction.

**{¶ 42}** We recognized that a trial court has statutory authority to impose restitution as part of a sentence in order to compensate the victim for economic loss. *Id.* at ¶ 20. However, we clarified that the amount of "restitution may not exceed the amount of economic loss suffered as a direct and proximate result of the commission of the offense," *id.* at ¶ 23, and reversed the award of restitution, because it was an award of the "consequential costs incurred subsequent to the theft to value the property that had been taken from and later returned to Aero–Instruments," not the actual economic loss suffered as a direct and proximate result of the commission of the offense, *id.* at ¶ 25.

**{¶ 43}** Similarly here, ODNR has already recovered the animal itself. It cannot recover more in restitution than its economic loss.

**{¶ 44}** Restitution serves rehabilitative goals in criminal sentencing; as the United States Supreme Court recently explained in *Paroline v. United States*, __ U.S. __, 134 S.Ct. 1710, 188 L.Ed.2d 714 (2014), " 'it forces the defendant to confront, in concrete terms, the harm his actions have caused.' " *Id.* at 1727, quoting *Kelly v. Robinson*, 479 U.S. 36, 49, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), fn. 10. Thus, the purpose of restitution "is not to punish the defendant, but to make the victim whole again by restoring to it the value of the losses it suffered." *United States v. Innarelli*, 524 F.3d 286, 293 (1st Cir.2008). For this reason, and in contrast to a fine or civil penalty, restitution is "calculated by reference to the amount of harm the offender has caused." *Kelly v. Robinson*, 479 U.S. 36, 52, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

**{¶ 45}** There is no indication that the General Assembly intended to deviate from these legal principles or to permit double recovery in cases of this type. Tellingly, other statutes governing restitution limit the victim to a single recovery of the actual economic loss. *See, e.g.,* R.C. 2929.18(A)(1) (providing for financial sanctions for felony offenses, including restitution, and stating, "All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender"); R.C. 2929.28(A)(1) (same for misdemeanor sentences); R.C. 3770.99(A) (providing for "restitution to the state lottery commission of any moneys erroneously paid as a lottery prize award" to a person prohibited from claiming that award); R.C. 163.03 (requiring "restitution or reimbursement for any actual damage" caused by a state agency entering private property for the purpose of making a survey or other activities taken when appropriating property); R.C. 4725.53(B) (permitting the Ohio Optical Dispensers Board to discipline an optician by ordering the licensee to make "restitution to a person who has suffered a financial loss").

{¶ 46} ODNR reads R.C. 1531.201(C)(1) as imposing a mandatory duty to collect the full restitution value of the deer in addition to recovering the animal itself. But the purpose of that statute is to establish the restitution value of an animal in cases in which there is a criminal conviction and the court orders a sentence in a criminal court:

> [A] person who is convicted of a violation of this chapter or Chapter 1533. of the Revised Code or a division rule governing the holding, taking, buying, sale, or possession of an antlered white-tailed deer with a gross score of more than one hundred twenty-five inches also shall pay an additional restitution value that is calculated using the following formula:
>
> Additional restitution value = ((gross score - 100)$^2$ x $1.65).

The statute does not require ODNR to assess and collect the additional restitution value in a civil action; rather, assessing restitution is a matter for the court imposing sentence for a conviction. In fact, R.C. 1533.99(G) states,

> A court that imposes sentence for a violation * * * may require the person who is convicted of or pleads guilty to the offense, in addition to any fine, term of imprisonment, seizure, and forfeiture imposed, to make restitution for the minimum value of the wild animal or animals illegally held, taken, or possessed as established under section 1531.201 of the Revised Code.

R.C. 1531.99(E) is nearly identical. And here, the sentencing court had already ordered restitution and the forfeiture of the animal in the criminal proceeding.

18

Thus, ODNR's imposing the additional restitution value is an additional penalty. *See Paroline*, 134 S.Ct. at 1725-1726 (explaining that an award of restitution disconnected from the harm the offender actually caused could bring the award within the purview of the Eighth Amendment).

{¶ 47} Permitting ODNR to obtain restitution in an amount significantly greater than the state's economic loss raises constitutional questions. Notably, the additional restitution value of $27,851.33 applies solely as the consequence of a conviction. R.C. 1531.201(B) and (C)(1). ODNR argues that permitting both recovery of the animal and an award of its full restitution value is central to the core purpose of R.C. 1531.201 to deter poaching by increasing the penalty to make sure the punishment fits the crime. Thus, ODNR itself considers the $27,851.33 restitution value to be a penalty.

{¶ 48} But ODNR's position is not well taken, because a statute seeking to impose a second punishment for an offense in a subsequent proceeding violates the Double Jeopardy Clause. *See, e.g.*, *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *State v. Raber,* 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 24. And if the award of restitution is punishment for a crime, then it must be imposed by a court at sentencing, not by an executive agency in a separate proceeding. *See Woods v. Telb*, 89 Ohio St.3d 504, 512, 733 N.E.2d 1103 (2000) (explaining that because the separation-of-powers doctrine precludes the executive branch of government from impeding the judiciary's imposition of a sentence, the Adult Parole Authority may impose postrelease-control sanctions only if a trial court incorporates postrelease control into its original sentence).

{¶ 49} The loss suffered by the state in this case is the deer, and the state received it in the prior judicial proceeding. In its brief, ODNR asserts that "trophy-size antlers could 'easily net' $20,000 on the black market," and in an affidavit presented in support of ODNR's motion for summary judgment, Jeffrey

B. Collingwood, one of ODNR's State Wildlife Investigators, averred that the animal Risner took "would be a highly coveted deer for a hunter particularly because of the unusually large and unique antler size." ODNR, however, has recovered the antlers that made the deer so valuable, as well as the rest of the animal, and nothing in this record justifies an additional recovery of more than $27,000.

{¶ 50} The state is not permitted a double recovery. Accordingly, I would reverse the judgment of the court of appeals and reinstate the trial court order entering summary judgment for Risner.

LANZINGER and O'NEILL, JJ., concur in the foregoing opinion.

_____

McKown & McKown Co., L.P.A., Gordon M. Eyster, and Kathryn M. Eyster, for appellant.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, Samuel C. Peterson, Deputy Solicitor, and Daniel J. Martin and Nichole Candelora-Norman, Assistant Attorneys General, for appellee.

_____